IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BARBARA HARLING,

    Plaintiff,

v.                                    CASE NO: 3:13-cv-1113-J-34JRK

ADO STAFFING, INC. *dba:*
ADECCO,

    Defendant.

_____ /

**SECONG AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Barbara Harling (hereafter "Harling" or "Plaintiff"), by and through her undersigned counsel, sues ADO Staffing, Inc. *dba* Adecco (hereafter collectively referred to as "Defendant" or "Adecco") and alleges:

**INTRODUCTION**

1. This is a Fair Labor Standards Act and Florida Whistle Blower action brought by Harling, a former Director of Human Resources working in the Jacksonville, Florida office of Adecco. Plaintiff brings this action under the anti-retaliation provision of the Fair Labor Standards Act of 1938, as amended (hereinafter "FLSA"), 29 U.S.C.§ 201, *et. seq.*, and the Florida Whistleblower Statute § 448.101, *et. seq., Fla. Stat.* Soon after Harling's hire, she discovered and opposed Adecco's misclassification of dozens of employees under the computer professional exemption. As a result of the

misclassification, Adecco was not paying these employees overtime. Harling refused to perpetuate the misclassification and repeatedly requested approval from her supervisor to implement a global reclassification of these employees. In addition, Harling refused to participate and objected to the retaliation of an employee who had complained of sexual harassment by a senior level director. Harling was retaliated against and terminated because she objected to, and/or refused to participate in, activities, policies, and practices of Defendant which violated laws, rules, or regulations. Plaintiff sues under the FLSA and Florida Statutes § 448.101, *et. seq.* for damages exceeding $200,000, including Plaintiffs' mental and emotional distress, backpay, front pay, compensatory, liquidated, punitive and other damages.

## JURISDICTION AND THE PARTIES

2. Jurisdiction is proper under 28 U.S.C. § 1331, § 1343 and 29 U.S.C. § 216 (b). The Court has supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in the Middle District, Jacksonville Division, because Defendant conduct business in Duval County and the cause of action arose in Duval County.

4. Harling was formerly employed by Defendant beginning September 2012, and ending June 2013.

5. Defendant is an international staffing corporation licensed to do business in the State of Florida, with an office in Duval County. (In 2009, Adecco acquired Modis,

Inc., Modis provide staffing solutions to companies in the IT industry. After the acquisition, Modis continued its operations as a division of Adecco).

6.  Defendant is an "enterprise engaged in commerce" within the meaning of the FLSA in that it engages in interstate commerce and has sales made or business done in excess of $500,000.00 in four rolling quarters, and is therefore covered by the FLSA.

7.  Defendant is an "employer" under § 3(d) of the FLSA and is covered by the Florida Whistleblower statute.

8.  Defendant is a Florida corporation that provides staffing services in a variety of industries for customers within and outside the state of Florida, and globally.

## GENERAL ALLEGATIONS

9.  In the summer of 2012, Adecco recruited and hired Plaintiff effective September 2012, as Director – HR Business Partner. Plaintiffs' respective duties while employed by Defendant consisted primarily of supporting Modis, Inc. one of Adecco's divisions. In this role, Harling supported one half of the Modis employees as well as half of the consultants leased to clients through Modis' Jacksonville, Florida office. Initially, Harling reported to the Vice President, Human Resources, Amy Herron ("Herron").

10. At all relevant times, Harling performed her respective duties in a satisfactory manner.

### Harling's Refusal to Participate in Misclassification of Workers Under the Computer Professional Exemption

11. Soon after her hire in September 2012, Harling was contacted by an employee whom she supported with a question about his classification under the Computer Professional Exemption ("CPE"). Upon further inquiry, Harling questioned Herron about the classification as Harling did not understand why the employee was classified under the exemption. Herron directed Harling to speak with a colleague, Jennifer Martinez, as Herron was unsure about the circumstance. Martinez told Harling to expect to be contacted with CPE complaints from the consultants whom she supported and to resolve them discreetly and quietly.

13. During this time, Harling learned that Minnesota did not recognize the CPE under its state wage and hour laws. Harling contacted the Minnesota branch manager, learned that all IT consultants were so classified, and was told that a global correction would drastically impact their financial position.

15. Harling was very concerned that Adecco was knowingly misclassifying workers and not taking immediate steps to correct the problem.

16. Thereafter, Harling met with Herron, conveyed her concern, and asked to take the lead on resolving the misclassification in Minnesota. Herron prohibited Harling from moving forward, stating that she was to take no action on the problem; "legal" needed to handle it, and pointed to a whiteboard in her office that included the topic "FLSA misclassification" on it.

17. In February 2013, Harling was asked by a managing director of the Knoxville and Chattanooga Modis branches to confirm that if a consultant received more than $27.63 per hour, he or she could be considered exempt as a Computer Professional. Harling informed the director that she would need to review the job descriptions of the position to provide the confirmation, to which the director seemed surprised. Harling

reviewed the job description, concluded that the position was not exempt, confirmed her conclusion with her colleague Jennifer Martinez and the Adecco Compensation Department, and delivered the conclusion to the director.

18.     The director was displeased with the conclusion, stated that it would impact her branch profits tremendously, and scheduled a conference call with the Regional Vice President, Brad O'Neal, and Harling. On the call, O'Neal berated Harling, stating that she was wrong, and pressured Harling to sign off on the determination that the position fell under the CPE. Harling refused. Thereafter, O'Neal excluded Harling from further discussion of the issue and brought it to Cordell.

19.     In February 2013, Harling was contacted by another managing director, John VanGilder, concerning a consultant working as a project manager who was complaining he was owed overtime pay. Harling concluded that the consultant was also misclassified under the CPE, and was owed overtime pay. Van Gilder asked Harling to participate in a call with another representative from Modis National Accounts ("MNA"), as the consultant worked for one of Adecco's national accounts. During the call, Van Gilder and the MNA representative became aggressive and accusatory, challenging Harding's competence, asking if Herron was aware of the circumstance, and pressuring Harling to stand by the classification. Harling refused and informed them that she would get in touch with Cordell.

22. In early March 2013, Adecco was paying its annual bonuses (from 2012) to Harling's peers. As part of Harling's compensation package, Harling was promised an annual bonus with a target of 12% base salary. When Harling asked Herron why she was not receiving a bonus, Herron responded that "there was no money for [Harling]."

24.     In May 2013, Harling was contacted by VanGilder who asked why the situation with the project manager had not been resolved. Harling was surprised that it had not been resolved given the transfer of ownership of the problem from Harling to Herron. Harling arranged to have the project manager paid approximately $9,000 in owed back pay and worked thereafter to have him properly classified under the Administrative exemption, and receive a salary.

26.     Soon after, Herron's successor, Gaby Powell, convened a conference call in which it was agreed to pay the project manager a weekly bonus for all hours worked over 40 hours, to which he agreed.

**Harling's Objection to Retaliation of Employees Complaining of Sexual Harassment**

27.     In May 2013, Harling received a complaint of sexual harassment from an employee in the Jacksonville office. Powell asked Harling to be the "lead" in investigating the hotline complaint on sexual harassment.

28.     The complaint had been made against a recruiting director who was being considered for promotion by Bobby Knight, the Senior Vice President of National

8

Accounts. The complainant had initiated the process in November 2012; Herron had investigated and closed the complaint.

29. Soon after Harling reviewed the file, Powell instructed Harling to review and analyze the complaining employee's production numbers to see if Adecco could terminate the employee. Harling was appalled and refused to do so.

30. Thereafter, Harling met with the complaining employee as well as other witnesses, each of whom corroborated the complaint. The complainant alleged that the director had engaged in hyper sexual comments, gestures, and jokes to other employees, including the complainant. Harling recommended that the director be terminated immediately.

31. Several days later, Powell asked Harling to participate in a meeting with the complaining employee. A few minutes prior to the meeting, Powell informed Harling that the director was not going to be terminated. In that meeting, Powell informed the employee that none of her allegations had been substantiated and the investigation was being closed. Following the brief meeting, Harling remained shocked at what Powell communicated and vehemently disagreed with the conclusion and recommended action. Harling asked Powell "who made the decision on this?" Powell informed Harling that both she and Jack Cullen made the decision.

32. Two weeks following this meeting, Harling was terminated from her position, effective on or about June 12, 2013.

33. As a direct and proximate result of the actions of Defendant, Harling has suffered pecuniary and non-pecuniary damages, including but not limited to, unpaid

bonus, lost wages, lost benefits, emotional pain and suffering, mental distress, inconvenience, and loss of professional reputation, and loss of enjoyment of life.

34. Plaintiff has incurred attorneys' fees and costs to bring this action.

35. The actions of the Defendant were willful, wanton and intentional and evidenced a complete disregard for the rights of Plaintiff.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## (RETALIATION)

36. Plaintiffs allege and adopt the allegations in paragraphs 2 through 26, as if fully set forth in Count I.

37. Prior to her termination, Plaintiff complained about the manner in which Defendant was classifying and paying its workers. Her complaints constituted activities that were protected under the Fair Labor Standards Act.

38. In March 2013, Plaintiff was not paid a bonus to which she was entitled. The stated reason for Plaintiff not receiving the bonus was a pretext for taking action against Plaintiff in retaliation for engaging in acts that were protected under law. Defendant's actions violated the non-retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. §215(a)(3).

39. Plaintiff was terminated in June 2013. The stated reason for her termination was a pretext for taking action against Plaintiff in retaliation for engaging in acts that were protected under law. Defendant's actions violated the non-retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. §215(a)(3).

40. Defendant violated the FLSA by imposing adverse terms and conditions of employment and ultimately terminating Plaintiff for pretextual reasons as a result of her objecting to Defendant's unlawful practices.

41. Plaintiffs suffered damages as a direct and proximate result of Defendant's unlawful retaliation.

42. Wherefore, Plaintiff prays for judgment against Defendant and an award of her pecuniary and non-pecuniary damages, including but not limited to back wages, reinstatement (or front pay in lieu of reinstatement), lost benefits, liquidated damages, compensatory damages, her attorney's fees and costs, and all other damages as allowed by law.

## COUNT II
## VIOLATION OF FLORIDA WHISTLE BLOWER STATUTE

43. Plaintiffs allege and adopt the allegations in paragraphs 2 through 26, as if fully set forth in Count II.

44. Prior to her termination, Plaintiff objected to and opposed Defendant's misclassification and pay practices, including their policy not to pay employees for overtime and she objected to, and/or refused to participate in, activities, policies, and practices of Defendant which violated laws, rules, or regulations.

45. Prior to her termination, Plaintiff objected to and opposed Defendant's, retaliation against employees who complained of sexual harassment, and/or refused to participate in, activities, policies, and practices of Defendant which violated laws, rules, or regulations.

46. Plaintiffs' complaints and opposition constituted activities that were protected under the Fair Labor Standards Act and the Florida Whistle Blower Act, Florida Statutes §448.101, *et. seq.*

47. In June 2013, Plaintiff was terminated. The stated reason was a pretext for taking action against Plaintiff for complaining about violations of the FLSA and Title VII. Plaintiff's objecting to, and/or refused to participate in, activities, policies, and practices of Defendants which violated the FLSA, Title VII, and other laws, rules, or regulations.

48. Defendant violated the Fair Labor Standards Act and the Florida Whistle Blower Act, Florida Statutes 448.101, *et. seq.* by imposing adverse terms and conditions of employment and ultimately terminating Plaintiff as a result of her protected activities and for her objection to, and/or refusal to participate in, activities, policies, and practices of Defendant which violated the FLSA and other laws, rules, and regulations.

49. Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful retaliation.

50. Wherefore, Plaintiffs pray for judgment against Defendant and an award of her pecuniary and non-pecuniary damages, including but not limited to back wages, unpaid bonus, reinstatement (or front pay in lieu of reinstatement), lost benefits, emotional pain and suffering, mental distress, inconvenience, loss of professional reputation, loss of enjoyment of life, her attorneys fees and costs, compensatory damages, punitive damages and all other damages as allowed by law.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 14, 2013

Respectfully submitted,

The Law Office of Kirsten Doolittle, P.A.

s/Kirsten Doolittle
Kirsten Doolittle
The Law Office of Kirsten Doolittle, P.A.
The Elks Building
207 North Laura Street, Suite 240
Jacksonville, FL 32202
Telephone: (904) 551-7775
Facsimile: (813) 274-6200
Email: kd@kdlawoffice.com
*Counsel for Plaintiff Barbara Harling*